```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
WILLIAM K. DUFFY, ET AL.,

                    Plaintiffs,          MEMORANDUM & ORDER
                                         09-CV-0655(JS)(ARL)
    - against -

MODERN WASTE SERVICES CORP., ET AL.,

                    Defendants.

----------------------------------------X
APPEARANCES:
For Plaintiffs:    Paula A. Clarity, Esq.
                   Archer, Byington, Glennon & Levine, LLP
                   425 Broadhollow Road, Suite 405
                   P.O. Box 9064
                   Melville, NY 11747

For Defendants:    John S. Wallenstein, Esq.
                   1100 Franklin Avenue, Suite 100
                   Garden City, NY 11530
```

SEYBERT, District Judge:

Plaintiffs seek to enforce Defendants' obligations under the Labor Management Relations Act, the Employee Retirement Income Security Act of 1974 ("ERISA") and a collective bargaining agreement. Pending before the Court is Plaintiffs' unopposed motion for summary judgment. For the reasons that follow, that motion is GRANTED, and the parties are ORDERED to comply with the schedule set forth at the end of this Memorandum and Order.

## BACKGROUND

Defendants have essentially abandoned the defense of

this action.  They failed to serve initial disclosures pursuant to this Court's scheduling order (Docket Entry 11) and they have failed to respond to any of Plaintiffs' discovery requests, including interrogatories, a request for documents, and a request for admissions.  Additionally, Defendants have not responded to Plaintiffs' Local Civil Rule 56.1 Statement. Accordingly, the facts contained therein are deemed admitted. See LOCAL CIV. R. 56.1(c).

I. The Parties

Plaintiffs William K. Duffy, Kenneth Huber, Phillip Capobianco, John Duffy, Scott Adrian, Paul O'Brien, Marc Herbst, James Haney III, and James Pratt III are Trustees of Local 138, 138A & 138B, International Union of Operating Engineers Welfare Fund, Legal Fund, Apprenticeship Training Fund, and Annuity Fund.  Michael Fanning is the Chief Executive Officer of the Central Pension Fund, and William K. Duffy, in addition to his role as Trustee, is the president of Local 138, 138A, 138B, and 138C International Union of Operating Engineers.  These men and the Union Funds they represent are collectively referred to herein as "Plaintiffs."  The Union Funds are jointly administered employee labor-management trust funds established and maintained under the Taft-Hartley Act, 29 U.S.C. §

186(c)(5), and are multi-employer employee benefit plans within the meaning of ERISA, 29 U.S.C § 1002(1), (2) and (37)(a).

Plaintiffs sued three construction companies and two individuals: Modern Waste Services Corporation ("Modern Waste"), Modern Concrete Corporation ("Modern Concrete") and Rotondo Contracting Corporation ("Rotondo Contracting") (collectively, the "Corporate Defendants"); and Maria Dellavedova and Quirino Rotondo (together, the "Individual Defendants"). Of the five Defendants, only Rotondo Contracting failed to answer. Plaintiffs indicated that they intend to seek a default judgment against Rotondo Contracting but have not yet done so.

## II. The Collective Bargaining Agreement

Modern Concrete, a New York corporation, is party to a collective bargaining agreement with the International Union of Operating Engineers Local 138, 138A, 138B and 138C ("Local 138") (Pl. 56.1 Stmt. ¶¶ 4, 7.) Defendant Dellavedova signed the collective bargaining agreement (the "Agreement") on Modern Concrete's behalf. (Id. ¶ 5.) The Agreement recognizes Local 138 as the sole and exclusive representative of all employees engaged in operating engineering work, and it obligates its signatories to make fringe benefit contributions to the Union Funds on behalf of those employees. (Affirmation of William K.

Duffy, Jr. ("Duffy Aff."), Ex. A, Art. III; Art. IV, § 2.) The required contributions are computed based on the number of hours that covered employees spent performing covered work. (Duffy Aff. ¶ 4.) The agreement also requires its signatory employers to cooperate in periodic books and records audits. (Duffy Aff. Ex. A, Art. IV, § 2-F.)

The Agreement contains several additional provisions that are relevant here. It provides that employers "shall not establish or participate in any double-breasted operation within the geographic jurisdiction of Local 138," (id. Art. IV, § 13), and it forbids employers from directing or requiring "their employees, or persons other than the employees in the bargaining units . . . to perform work which is recognized as the work of the employees in said units." (Id. Art. IV, § 5.) The Agreement provides that the signatory employers "shall be defined to include any Employer having common ownership, control of labor relations, etc. . . ." (Id. Art. IV, § 6.) Also, the Agreement incorporates by reference certain Trust Documents which provide that employee benefit contributions owed to Plaintiffs by Modern Concrete constitute plan assets. (Pl. 56.1 Stmt. ¶ 8; Duffy Aff. ¶¶ 5-13; id. Exs. C-F; Clarity Decl. Ex. I, ¶ 122, Ex. 2, ¶ 125, Ex. 3, ¶ 96, Ex. 4, ¶ 96.)

4

III. The Wrongdoing

Modern Concrete, which signed the Agreement, and Modern Waste and Rotondo Contracting, which did not, are separate companies in name only. They have common ownership, common officers, common directors and common management. (Pl. 56.1 Stmt. ¶¶ 76-80.) They also share professional and administrative services, including office staff. (Id. ¶ 81). They share equipment and tools, and they have the same employees, who perform the same services for the same customers. (id. ¶¶ 82-91.) They operate from the same location and cover the same geographic area, (id. ¶¶ 92-95.), and they have co-mingled construction project proceeds. (Id. ¶¶ 96-98.)

From at least 2005, the Corporate Defendants have failed to make required fringe benefit contributions, despite having the means to do so. Instead, they retained construction project proceeds and diverted them to other creditors. (Id. ¶¶ 120-125.) The exact extent of the Corporate Defendants' failure to meet their obligations is unclear because Plaintiffs have not been able to audit the Corporate Defendants' books and records.

The Individual Defendants, who are married to each other, are the shared owners of the Corporate Defendants. They are the principals, officers, and managers of each company.

(Pl. 56.1 Stmt. ¶¶ 12-46, 47-75.) As the decision-makers behind each Corporate Defendant, the Individual Defendants decide which creditors to pay, how much they are paid, and when they are paid. (Id. ¶¶ 138-44, 164-72.) They determine which employees are paid by each company, (id. ¶¶ 126, 154), which employees have fringe benefit contributions made on their behalf, (id. ¶¶ 150, 178), and which employees are recorded on the each Corporate Defendant's books and records. (Id. ¶¶ 151, 179.) They have arranged for work covered by the Agreement to be performed by Modern Waste and Rotondo Contracting, non-signatories to the Agreement, (id. ¶¶ 152-53, 180-81), and they have diverted Plaintiffs' assets for their own use. (Id. ¶¶ 149, 177.)

IV. Plaintiffs' 2008 Judgment against Modern Concrete

In 2008, Plaintiffs obtained a $73,439.80 judgment against Modern Concrete arising out of unpaid fringe benefit contributions (the "2008 Judgment"). See Duffy v. Modern Concrete, No. 07-CV-0962, 2008 WL 822111, at *1 (E.D.N.Y. Mar. 25, 2008) (adopting report and recommendation). That judgment remains unsatisfied. (Compl. ¶¶ 45-46.)

V. Plaintiffs' Complaint

In their Complaint, Plaintiffs seek, among other

6

things, (1) an Order declaring that the Corporate Defendants are bound by the Agreement; (2) an Order declaring that all Defendants are jointly and severally liable for each other's obligations under the Agreements and federal labor law; (3) an Order directing the Corporate Defendants to cooperate in an audit of their books and records; and (4) a judgment against all Defendants, jointly and severally, for at least $73,439.80 (representing the 2008 Judgment) plus additional unpaid fringe benefit contributions, interest, and attorneys' fees and costs. (See Compl. at p. 22-25.)

## DISCUSSION

By their unopposed summary judgment motion, Plaintiffs assert that the Corporate Defendants were: (i) actually a "single employer" and a "single appropriate bargaining unit,"; and (ii) are jointly and severally liable for one another's obligations under the Agreement and federal labor law, including for unpaid fringe benefit contributions. Plaintiffs further assert that the Corporate Defendants' veil should be pierced to permit Plaintiffs to reach the Individual Defendants' personal assets. They also request an Order requiring the Corporate Defendants to submit to books and records audit, and an Order awarding their attorneys' fees and costs. As there are no

7

genuine issues of material fact as to their entitlement to this relief, Plaintiffs' motion is granted.

I. <u>Standard of Review under Federal Rule of Civil Procedure 56</u>

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986); <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>see also</u> F<small>ED</small>. R. C<small>IV</small>. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994) (<u>citing</u> <u>Heyman v. Com. & Indus. Ins. Co.</u>, 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party

must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

When a party has appeared in an action, but not opposed summary judgment, the moving party does not win by default. Instead, the Court must "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004). And "[i]f the evidence submitted in support of the summary judgment motion does not meet [Plaintiff's] burden of production, then summary judgment must be denied," even though the non-movant failed to oppose it.

## II. Application to Plaintiffs' Unopposed Motion

The undisputed facts of this case establish that Plaintiffs are entitled to summary judgment.

### A. Modern Concrete, Modern Waste and Rotondo Contracting Constitute a "Single Employer/Single Unit"

Plaintiffs advance two theories why Modern Waste and Rotondo Contracting are bound by Modern Concrete's obligations: first, because Modern Waste and Rotondo Contracting are Modern Concrete's alter egos; and second, because all three entities are really a "single employer" constituting a single bargaining unit. Although these two doctrines are "conceptually distinct," Lihli Fashions Corp., Inc. v. N.L.R.B., 80 F.3d, 743, 748 (2d Cir. 1996), that distinction has proven difficult to articulate. Barbera v. R. Rio Trucking, Nos. 03-CV-1508, 06-CV-1329, 2010 WL 3928553, at *9 (E.D.N.Y. Sept. 30, 2010). The case law attempting to define the contours of each doctrine seems to hold that the single employer/single unit doctrine is available where the entities operate concurrently, and that the alter ego doctrine typically applies if one entity effectively replaced the other in an attempt to evade the latter's responsibilities under a collective bargaining agreement. See Barbera v. R. Rio Trucking, 2010 WL 3928553, at *9. Given that the Corporate Defendants operated simultaneously, the Court addresses Plaintiffs' single employer/single unit theory first. Since it agrees with Plaintiffs on this point, it does not reach their

alter ego argument.

One employer may be jointly and severally liable for the obligations of another employer if (i) the two businesses constitute a "single employer" and (ii) the employees of the businesses constitute "a single appropriate bargaining unit." Brown v. Sandimo Materials, 250 F.3d 120, 129 n. 2 (2d Cir. 2001); Lihli Fashions Corp., Inc. v. N.L.R.B., 80 F.3d 743, 747-48 (2d Cir. 1996). Separate companies are considered a "single employer" if they are part of a "single integrated enterprise." Brown, 250 F.3d at 129 n. 2; Barbera, 2010 WL 3928553, at *8, 11.

### 1. Single Employer

Whether multiple businesses are a "single employer" is evaluated using several factors, including whether the businesses have (1) "interrelated operations;" (2) "common management;" (3) "centralized control of labor functions;" (4) "common ownership;" and (5) common office facilities, equipment or family connections. Barbera, 2010 WL 3928553, at *11. All of the factors need not be present, and no single factor is controlling. Id. "Ultimately, single employer status depends on all the circumstances of [a particular] case. Id. (quoting Lihli, 80 F.3d at 747).

These factors weigh in favor of single employer status for Modern Concrete, Modern Waste and Rotondo Contracting. Their operations were interrelated because they used the same personnel and equipment to provide the same services to the same customers. (Pl. 56.1 Stmt. ¶¶ 82, 86, 94, 108, 109, 117.) They had common management because the Individual Defendants were the owners and managers of all three companies. (Pl. 56.1 Stmt. ¶¶ 15-22, 24-32, 36-45, 47-74.) The Corporate Defendants had common ownership, (Pl. 56.1 Stmt. ¶¶ 16-19, 30-31, 34-35, 38-39, 44-45, 49-50, 55-56, 65-66, 76, 99), and they shared office space, equipment and family connections. (See id. ¶¶ 92, 95, 115, 118 (Corporate Defendants conducted business out of the same premises); Answer ¶¶ 2-3 (same); Pl. 56.1 Stmt. ¶¶ 83, 105, 106 (Corporate Defendants used common tools and equipment); id. ¶¶ 46, 75 (the Individual Defendants are married to each other)). The Corporate Defendants' shared employees and the interchange of employees between the three entities are evidence of centralized labor relations. Lihli, 80 F.3d at 747; Finkel v. Frattarelli Bros., Inc., No. 05-CV-1551, 2008 WL 2483291, at *11 (E.D.N.Y. June 17, 2008); Pl. 56.1 Stmt. ¶¶ 86, 109.

2. Single Bargaining Unit

Whether several businesses constituting a "single

12

employer" also constitute a "single appropriate bargaining unit" depends on whether there is a "community of interests" among the businesses' employees. Brown v. Sandimo Materials, 250 F.3d 120, 129 n. 2 (2d Cir. 2001). The factors bearing on this analysis include "bargaining history, operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." Id. (quotations omitted).

The undisputed facts establish that the Corporate Defendants' employees share a "community of interests." The Corporate Defendants have integrated operations, including shared professional and administrative services. (Pl. 56.1 Stmt. ¶¶ 81, 104.) The Corporate Defendants have a high degree of employee interchange, (see id. ¶¶ 86, 109) and their employees are supervised by the same managers (id. ¶¶ 20-21, 26-27, 59-60, 69-70, 80, 103). The employees of each Corporate Defendant have similar working conditions, job duties, skills, job classifications and job functions (id. ¶¶ 89-92, 112-14), and they work in the same geographical areas (id. ¶¶ 93, 116) where they served the same customer base (id. ¶¶ 85, 108). Accordingly, the undisputed facts demonstrate that there is no genuine question that the Corporate Defendants operate as a

"single appropriate bargaining unit." Thus, the Court treats them as a "single employer/single unit" for the purposes of this litigation.

B. <u>The Company Defendants are Jointly and Severally Liable for Modern Concrete's Obligations</u>

The Corporate Defendants are jointly and severally liable for Modern Concrete's obligations, including its obligations under the Agreement and its obligation to satisfy the 2008 Judgment. Businesses comprising a "single employer/single unit" for labor law purposes are jointly and severally liable for each other's obligations under collective bargaining agreements. See <u>Brown v. Sandimo Materials</u>, 250 F.3d 120, 128 n.2 (2d Cir. 2001) ("[A] collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit."); <u>Lihli Fashions Corp., Inc. v. N.L.R.B.</u>, 80 F.3d 743, 747-48 (2d Cir. 1996). Similarly, they are responsible for one another's debts and financial obligations. <u>Lihli</u>, 80 F.3d at 748. Accordingly, the Corporate Defendants are each bound by the Agreement and they are jointly and severally liable for each other's obligations.

C. <u>Plaintiffs Are Entitled to Audit the Corporate Defendants' Books and Records</u>

Having established that the Corporate Defendants constitute a single employer and single bargaining unit, and are thus obligated to each other's responsibilities under collective bargaining agreements, it logically follows that Modern Waste and Rotondo Contracting are bound by the provision of the Agreement permitting Plaintiffs to audit an employer's books and records. The Agreement unequivocally provides Plaintiffs with audit rights. (<u>See</u> Duffy Aff., Ex. A at Art. IV, § 2-F ("The Union and/or Local 138 Funds shall have the right to audit all books and records of the Employer to insure compliance with the terms of this Agreement.") Accordingly, the Corporate Defendants are ordered to cooperate in an audit of their books and records.

D. <u>The Individual Defendants are Personally Liable</u>

The Trustees seek to pierce the veil and hold the Individual Defendants personally liable, jointly and severally with the Corporate Defendants. The veil-piercing analysis is generally governed by the law of the place of incorporation. <u>Sykes v. Mel Harris and Associates, LLC</u>, __ F. Supp. 2d __, 2010 WL 5395712, at *11 (S.D.N.Y. Dec. 29, 2010), and here Modern Concrete is incorporated in New York. Under New York law, a

15

court may pierce the corporate veil where "1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001) (quoting Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)). In evaluating whether the owner dominated the corporation, courts consider the following factors:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms [sic] length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

Id. (citing Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997)); Federal Nat. Mortg. Ass'n v. Olympia Mortg. Corp., 724 F. Supp. 2d 308, 318 (E.D.N.Y. 2010). The undisputed facts demonstrate that veil-piercing is appropriate to reach the Individual Defendants' personal assets.

1. The Individual Defendants Dominated the Corporate Defendants

Having considered the above-listed factors in light of the undisputed facts, the Court concludes that the Individual Defendants dominated the Corporate Defendants to a degree warranting veil-piercing. In particular, the facts demonstrate that there was large, if not total, overlap in the ownership, management and personnel between the Individual and Corporate Defendants. Specifically, the Individual Defendants were each principals, co-owners and managers of all three Corporate Defendants (Pl. 56.1 Stmt. ¶¶ 12-13, 18-27, 30-33, 36-37, 40-41, 44-45, 47-48, 53-54, 57-58, 67-68, 71-72, 76, 79, 99-103). They supervised overlapping groups of employees at each Corporate Defendant (id. ¶¶ 86, 109), and they managed each Corporate Defendant's operations from the same workspace. (Id. ¶¶ 92, 95, 115, 118.) Further, the Individual Defendants oversaw the Corporate Defendants' overlapping operations, which used the same people, tools and equipment to provide the same services to the same customers. (Id. ¶¶ 82-83, 85-86, 94, 105-06, 108, 109, 117.) In light of these undisputed facts, there is no genuine question that the Individual Defendants dominated the Corporate Defendants.

2. The Individual Defendants Abused the Corporate Form to Defraud Plaintiffs

The next issue is whether the Individual Defendants abused the corporate form to defraud Plaintiffs. The undisputed facts indicate that they did. They dominated and controlled the Corporate Defendants, (see Pl. 56.1 Stmt. ¶¶ 47-48, 57-58, 67-68, 164-66; Answer ¶ 19), and they had final say as to which of the Corporate Defendants' creditors were paid. (Pl. 56.1 Stmt. ¶¶ 138-44, 164-72.) Yet they diverted construction proceeds and money representing unpaid fringe benefit contributions for their personal gain instead of forwarding the required contributions to Plaintiffs. (See id. ¶¶ 149, 177.) Further, they used their power to arrange for covered work to be performed by employees nominally controlled by non-signatories to the Agreement, (id. ¶¶ 152-53, 180-81), thereby manipulating how much Modern Concrete would owe in fringe benefit contributions under an hours-based formula.

For the foregoing reasons, Plaintiffs are entitled to pierce the corporate veil to reach the Individual Defendants' personal assets. The Individual Defendants are jointly and severally liable to the same extent as the Corporate Defendants.[1]

---

[1] Plaintiffs relied on a traditional veil-piercing analysis in support of their effort to reach the Individual Defendants'

E. <u>Plaintiffs are Entitled to Reasonable Attorneys' Fees</u>

Although they cite 29 U.S.C. § 1132(g)(1), which provides for a discretionary award of attorneys' fees, Plaintiffs are actually entitled to a mandatory award of reasonable legal fees and costs under 29 U.S.C. § 1132(g)(2). <u>See</u> <u>Duffy</u>, 2008 WL 822111, at *5. Accordingly, Plaintiffs shall submit an accounting of its reasonable attorneys' fees and costs in accordance with this Memorandum and Order.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' unopposed motion for summary judgment is GRANTED. For the purposes of this litigation, the Corporate Defendants are a "single employer/single unit." As such, they are all bound by the Agreement and jointly and severally liable for each other's obligations under it and the federal labor laws, including liability for the 2008 Judgment. The Individual Defendants are

---

personal assets, and the Court agrees that the undisputed facts support their argument. Even if the facts did not warrant reaching piercing the veil under traditional principles, a "controlling corporate official" who "defrauds or conspires to defraud a benefit fund of required contributions" is personally liable for those contributions. <u>Leddy v. Standard Drywall, Inc.</u>, 875 F.2d 383, 388 (2d Cir. 1989) (affirming individual liability, even though veil-piercing was not warranted under common law principles); <u>see</u> <u>also</u> <u>Finkel v. Frattarelli Bros., Inc.</u>, No. 05-CV-1551, 2008 WL 2483291, at *13 (E.D.N.Y. June 17, 2008).

jointly and severally liable to the same extent as the Corporate Defendants.

It is hereby ORDERED that the Corporate Defendants shall permit Plaintiffs to audit their books and records. Within sixty (60) days of Plaintiffs' audit, they shall move for the entry of a judgment against all Defendants, jointly and severally, for the amount of the 2008 Judgment plus any additional unpaid fringe benefit contributions to which Plaintiffs believe they are entitled based on their audit. At that time, Plaintiffs shall also submit an accounting of the legal fees and costs they reasonably incurred to pursue this action. If the Corporate and/or Individual Defendants wish to respond, they may do so within fifteen (15) days of Plaintiffs' application.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: February  14 , 2011
       Central Islip, New York