UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
WILLIAM K. DUFFY, KENNETH HUBER,
PHILLIP CAPOBIANCO, JOHN DUFFY,
SCOTT ADRIAN, PAUL O'BRIEN, MARC          MEMORANDUM & ORDER
HERBST, JAMES HANEY, III, and JAMES       09-CV-0655(JS)(GRB)
PRATT, III, as Trustees of LOCAL
138, 138A & 138B, INTERNATIONAL
UNION OF OPERATING ENGINEERS
WELFARE FUND, LEGAL FUND,
APPRENTICESHIP TRAINING FUND, and
ANNUITY FUND, MICHAEL FANNING, as
CEO of the CENTRAL PENSION FUND and
WILLIAM K. DUFFY as PRESIDENT of
LOCAL 138, 138A, 138B & 138C,
INTERNATIONAL UNION OF OPERATING
ENGINEERS,

                    Plaintiffs,

        -against-

MODERN WASTE SERVICES CORP., MODERN
CONCRETE CORP., MARIA DELLAVEDOVA
a/k/a MARIA ROTONDO, ROTONDO
CONTRACTING CORP. and QUIRINO ROTONDO
a/k/a RENO ROTONDO,

                    Defendants.
------------------------------------X
APPEARANCES
For Plaintiffs:     John H. Byington, III, Esq.
                    Paula A. Clarity, Esq.
                    Archer, Byinton, Glennon & Levine, LLP
                    One Huntington Quadrangle, Suite 4C10
                    P.O. Box 9064
                    Melville, NY 11747

For Defendants:     John S. Wallenstein, Esq.
                    100 Franklin Avenue, Suite 100
                    Garden City, NY 11530

                    Richard B. Ziskin, Esq.
                    The Ziskin Law Firm, LLP
                    6268 Jericho Turnpike, Suite 12A
                    Commack, NY 11725

SEYBERT, District Judge:

Currently pending before the Court is Plaintiffs' motion for damages. For the following reasons, Plaintiffs' motion is GRANTED, as modified below.

<u>BACKGROUND</u>

The Court assumes familiarity with the underlying facts and procedural history of this case, which are detailed in the Court's February 14, 2011 Memorandum and Order (the "Summary Judgment Order," Docket Entry 24). Briefly, Plaintiffs are William K. Duffy, Kenneth Huber, Phillip Capobianco, John Duffy, Scott Adrian, Paul O'Brien, Marc Herbst, James Haney, III, and James Pratt, III, as Trustees of Local 138, 138A, and 138B, International Union of Operating Engineers Welfare Fund, Legal Fund, Apprenticeship Training Fund, and Annuity Fund, and Michael Fanning, as CEO of the Central Pension Fund (collectively the "Funds" or "Plaintiffs"). Defendants are three construction companies and two individuals: Modern Waste Services Corporation ("Modern Waste"), Modern Concrete Corporation ("Modern Concrete"), Rotondo Contracting Corporation ("Rotondo Contracting" and collectively, the "Corporate Defendants"), Maria Dellavedova ("Dellavedova"), and Quirino Rotondo ("Rotondo" and collectively, "Defendants"). Plaintiffs commenced this action on February 17, 2009 seeking to enforce Defendants' obligations under the Labor Management Relations

Act, the Employee Retirement Income Security Act of 1974 ("ERISA"), and a collective bargaining agreement ("CBA").

Before commencing this case, Plaintiffs obtained a $73,439.80 judgment against Modern Concrete arising out of unpaid fringe benefit contributions (the "2008 Judgment"). See Duffy v. Modern Concrete Corp., No. 07-CV-0962, 2008 WL 822111, at *1 (E.D.N.Y. Mar. 25, 2008) (adopting report and recommendation). That judgment remains unsatisfied, and in the Summary Judgment Order in this case, the Court determined that Defendants are jointly and severally liable for each other's obligations under the Agreement and the federal labor laws, including liability for the 2008 Judgment. (See Summary Judgment Order at 6, 19.)

Also in the Summary Judgment Order, the Court held that Modern Concrete, Modern Waste, and Rotondo Contracting constitute a single employer/single unit, that Plaintiffs are entitled to audit the Corporate Defendants' books and records, and that Dellavedova and Rotondo (the "Individual Defendants") are personally liable. Accordingly, the Court ordered the Corporate Defendants to permit Plaintiffs to audit their books and records and required that Plaintiffs, within sixty days of the audit, move for entry of a judgment against all Defendants, jointly and severally, for the amount of the 2008 Judgment plus any additional unpaid fringe benefit contributions to which

3

Plaintiffs believe they are entitled based on the audit. (Summary Judgment Order at 20.) Further, the Summary Judgment Order held that Plaintiffs are entitled to a mandatory award of reasonable legal fees and costs under 29 U.S.C. § 1132(g)(2) and that Plaintiffs should submit an accounting along with their motion for entry of a judgment.

Thereafter, Plaintiffs sought an Order to Show Cause as to why judgment should not be entered holding Defendants in contempt of court and assessing contempt fines in the amount of $500.00 per day against Defendants, jointly and severally, for Defendants' failure to permit and cooperate in an audit of the Corporate Defendants' books and records. (Docket Entry 26.) This Court signed that Order to Show Cause and subsequently held a hearing on December 21, 2011. As a result of the hearing, the Court issued an Order on January 3, 2012 (the "Contempt Order," Docket Entry 31) finding Defendants in contempt of Court and assessing a contempt fine of $500 per day from December 21, 2011 until Defendants produced particular records for Plaintiffs' audit.

Plaintiffs maintain that Defendants have yet to fully comply with the Court's orders, but that they have been able to procure an audit based upon the limited records Defendants have provided. With the audit complete, Plaintiffs now move for entry of judgment.

<u>DISCUSSION</u>

Plaintiffs move for entry of judgment seeking unpaid fringe benefit contributions as established by an audit, together with interest, liquidated damages, attorneys' fees, legal costs and disbursements pursuant to ERISA Section 502(g)(2), as well as fines pursuant to the Contempt Order, and for the unsatisfied 2008 Judgment. The Court will address each of these issues in turn.

I. <u>The 2008 Judgment</u>

Defendants do not dispute that they are jointly and severally liable for the 2008 Judgment, and the Court clearly held as much in its Summary Judgment Order. Accordingly, Plaintiffs are entitled to judgment against Defendants, jointly and severally, in the amount of the 2008 Judgment with post-judgment interest, totaling $78,286.27, with post-judgment interest of $2.87 per day to accrue from January 1, 2013 until entry of judgment.

II. <u>The Contempt Fines</u>

Plaintiffs maintain that, to date, Defendants have failed to comply with the Summary Judgment and Contempt Orders, and therefore should be liable for $500 per day from December 21, 2011 until the present. While the Court agrees that Defendants are liable for some sanctions, the Court disagrees

that Defendants should be ordered to pay $500 per day from December 21, 2011 until entry of judgment.

The Contempt Order required that Defendants provide, for the period covering calendar years 2005 to the present:

> ¶2: Business Income tax records; general ledgers; general journals; books of original entry; subsidiary ledgers; payroll journals and other related payroll records; bank statements and cancelled checks; W-2 and W-3 forms; 940, 941, WT4-A and WT4-B forms; 1099 forms; New York State Employment records; insurance company reports; disability insurance premium reports; worker compensation reporting forms; job cost records; remittance forms as well as the same books of any affiliated, subsidiary, or other related company performing bargaining unit work; records relating to the work performed by Modern Waste, Modern Concrete and Rotondo Contracting Corp. and for fringe benefit contributions paid for work by any employees outside of the trade or geographic jurisdiction of Local 138, 138B, International Union of Operating Engineers.
>
> ¶3: That on or before January 5, 2012, the defendants Maria Rotondo and Reno Rotondo shall produce and make available for inspection and copying by plaintiffs and plaintiffs' auditors, their individual state and federal income tax returns, including all schedules, forms, and attachments thereto . . .
>
> ¶4: That on or before January 5, 2012, the defendants Maria [Dellavedova] Rotondo and Reno Rotondo shall produce and make available for inspection and copying by plaintiffs and plaintiffs' auditors, records reflecting each of said defendant's current employer, and reflecting any employment engaged in by either of said defendants during the fourth quarter of calendar year 2011, together with copies of pay records for each defendant from their current

employer and for all employment during the
                    fourth quarter of calendar year 2011.

(Contempt Order at 2-3.)    It further provided that, if

Defendants were unable to produce any of the aforementioned

records, they were to provide a sworn statement of the specific

basis, facts, and circumstances which prevented the production

of those records.  (Contempt Order at ¶ 5.)

        On January 12, 2012, Modern Concrete provided

Plaintiffs with payroll records for 2005 to May 2007, and bank

statements over the period from January 2006 to December 2009.

(Byington Decl. ¶ 8 & Exs. 1-2.)  In addition, on January 26,

2012, Plaintiffs' counsel received affidavits from the

Individual Defendants.  (Byington Decl. ¶ 9 & Exs. 3-4.)

According to those affidavits, the Individual Defendants refused

to produce their income tax records and those of the Corporate

Defendants on the basis of the Fifth Amendment privilege against

self-incrimination.

        Defendants essentially do not dispute that they have

not provided certain records and that they have withheld other

records pursuant to their Fifth Amendment privilege against

self-incrimination.  However, they maintain that the affidavits

received by Plaintiffs' counsel on January 26, 2012 satisfied

their obligations under the Contempt Order and that any

sanctions should run only from December 21, 2011 to January 26, 2012. (Defs. Opp. Br., Docket Entry 38, at 9-13, 17.)

At the outset, the Court agrees with Plaintiffs that the Individual Defendants' affidavits did not satisfy their obligations under the Contempt Order. In particular, the Court notes that the Individual Defendants' depositions contradict statements they made in their prior affidavits. For example, Quirino's Affidavit of January 24, 2012 (Quirino Aff., Byington Decl. Ex. 3) states that, for records such as insurance company reports, Quirino was in the process of reviewing eighteen boxes of files that had been seized and returned by the "District Attorney's office."[1] (Quirino Aff. ¶ 4(n).) Dellavedova's Affidavit contains similar language, noting that she was also in the process of reviewing the eighteen boxes returned from the District Attorney's office. (Dellavedova Aff., Byington Decl. Ex. 4, ¶¶ 4(b), 4(d) - (r).) In addition, Dellavedova states in her Affidavit that certain records were in the possession of her former accountant who had passed away and that "[a] new

---

[1] Quirino's Affidavit also asserts a Fifth Amendment privilege for personal state and federal income tax returns as well as business income tax records (Quirino Aff. ¶¶ 4(a), 7) and maintains that many of the other potentially responsive documents were never created and therefore cannot be produced (Quirino Aff. ¶¶ 4(b) - (m), (o) - (r)). Dellavedova's Affidavit likewise asserts a Fifth Amendment privilege for personal and business tax records (Dellavedova Aff. ¶¶ 4(a), 7) and asserts that other records are not in existence because Modern Concrete ceased operations in the summer of 2007.

accounting firm has been retained to obtain such records."
(Dellavedova Aff. ¶¶ 4(a), 4(f) - (m).)  During her deposition,
however, Dellavedova testified that she did not yet have a new
accounting firm and that she had not yet reviewed the boxes
returned from the Nassau District Attorney's office.
(Dellavedova Dep., Byington Decl. Ex. 5, at 30-32 (admitting
that she does not have a new accounting firm); id. at 40 ("Q: So
you have not gone back to look in the 18 boxes after the Court
issued the contempt order which we've been looking at as
Plaintiffs' Exhibit 1; is that correct?  A: No.  Q: That's not
correct, or no, you have not reviewed those records?  A: No, I
have not reviewed them.").)

   Thus, the Individual Defendants' affidavits stating
that they were continuing to look for responsive documents, and
then later admissions that they had not even begun that process,
certainly does not fully comply with the Contempt Order to
either promptly produce the records to Plaintiffs or explain why
they could not do so.  However, the Court will not impose
sanctions through the entry of judgment.

   "A party may be held in civil contempt for failure to
comply with a court order if (1) the order the contemnor failed
to comply with is clear and unambiguous, (2) the proof of
noncompliance is clear and convincing, and (3) the contemnor has
not diligently attempted to comply in a reasonable manner."

*Paramedics Electromedecina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks and citation omitted). Here, the Court determined, after a hearing, that Defendants were in contempt and that Defendants should be liable for $500 per day for every day that they failed to comply with the Court's Summary Judgment Order. Despite the Contempt Order, though, the Individual Defendants admitted noncompliance and, despite affirmations that they were diligently attempting to comply, they had barely even begun the process. See *Alston v. W. 88th Garage, LLC*, No. 11-CV-8317, 2012 WL 6629116, at *2 (S.D.N.Y. Dec. 20, 2012) (sanctions appropriate where defendant had supplied only limited records).

However, the Court has discretion in imposing sanctions. See, *e.g.*, *Burgie v. Euro Brokers, Inc.*, No. 05-CV-0968, 2008 WL 4185701, at *8 (E.D.N.Y. Sept. 8, 2008) (declining sanctions, even where all elements were met, due to the posture of the case). Here, Plaintiffs began conducting an audit in April 2012. (Reinhardt Aff., Docket Entry 34-21, ¶ 4.) Although Defendants could have theoretically complied with the Contempt Order even during or after the audit, the very purpose of the Contempt Order was that Defendants supply the documentation needed for a complete audit. (Contempt Order ¶ 2 (ordering that Defendants provide "those records as required by

10

plaintiffs' auditors").)  Accordingly, once the audit took place, and Plaintiffs necessarily had to rely only on the limited books and records that Defendant supplied, the need for further sanctions diminished.  See Brown v. J.F.H. Mak Trucking, No. 95-CV-2118, 1999 WL 1057274, at *3 n.4 (E.D.N.Y. Nov. 8, 1999) ("The sole purpose of the civil contempt motion before this Court was to compel compliance with the default judgment, therefore, the necessity for the contempt sanction ended with the expiration of the collective bargaining agreement.").  Thus, the Court finds that a contempt fine of $500 per day commencing on December 21, 2011 through April 1, 2012 is appropriate.

II.  Unpaid Fringe Benefit Contributions

ERISA Section 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make contributions in accordance with the terms and conditions of such plan or agreement."  29 U.S.C. § 1145.  As part of the Summary Judgment Order, the Court determined that "[f]rom at least 2005, the Corporate Defendants have failed to make required fringe benefit contributions, despite having the means to do so."  (Summary Judgment Order at 5.)  Accordingly, Plaintiffs are entitled to any unpaid contributions.  See 29 U.S.C. § 1132(g)(2)(A).  To that end, Plaintiffs conducted an

audit, based upon the limited documentation provided by Defendants, which determined that Modern Concrete failed to pay fringe benefit contributions of $378,937.80 for the period of January 1, 2005 through May 31, 2007 (the "Audit Period").

As the Court previously stated in its Summary Judgment Order, "[t]he burden of proving that there is no genuine issue of material fact rests with the moving party. Once that burden is met, the non-moving party must come forward with specific facts to demonstrate that the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (Summary Judgment Order at 8-9 (internal quotation marks and citation omitted).) Defendants contend that the flaws in Plaintiffs' audit, combined with the January 23, 2013 Rotondo Affidavit, create genuine issues of fact so as to "preclude Plaintiffs' motion for entry of judgment." (Defs. Opp. Br., Docket Entry 38, at 15.) The Court disagrees.

In support of their motion, Plaintiffs submitted the Affidavit of Joseph Reinhardt ("Reinhardt"), a certified public accountant and partner of the accounting firm of Berdon LLP ("Berdon"). (Reinhardt Aff. ¶ 1.) Reinhardt's Affidavit explains the documents reviewed and methods used in determining the amount of contributions owed. (Reinhardt Aff. ¶¶ 5-6 & Ex. A (Berdon's "agreed-upon procedures" audit report).)

As part of their opposition, Defendants offer the January 23, 2013 Rotondo Affidavit. According to Rotondo, seven individuals (the "Contested Employees") listed in the Berdon audit report did not perform work covered by the CBA with International Union of Operating Engineers Local 138, and therefore, "Berdon erroneously charged Modern Concrete for fringe benefit contributions that were not due and owing to the International Union of Operating Engineers Local 138 Fringe Benefit Funds." (Jan. 23, 2013 Rotondo Aff. ¶ 7.) More specifically, Rotondo affirms that four employees, Franco Rotondo, Jr., Franco Rotondo, Sr., Daniel Rotondo, and Lawrence Pignataro were project managers during the Audit Period and therefore not employed as operating engineers and did not perform work covered by the relevant CBA. (Jan. 23, 2013 Rotondo Aff. ¶¶ 8, 9, 11, 14.) Additionally, Rotondo asserts that one employee, Brian McLoughlin, was employed as a general building laborer and therefore also was not covered by the CBA. (Jan. 23, 2013 Rotondo Aff. ¶ 10.) Finally, the Rotondo Affidavit states that Christopher Henry and Christopher Klan were employed as operating engineers in Connecticut and were not regularly employed as operating engineers in the counties of Nassau and Suffolk in order to be covered by the CBAs. (Jan. 23, 2013 Rotondo Aff. ¶¶ 12-13.)

The January 23, 2013 Rotondo Affidavit, however, provides no supporting evidence for these blanket assertions. As Defendants themselves acknowledge, "[m]ere conclusory allegations or denials will not suffice." (Defs. Opp. Br. at 15 (quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). In addition, "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Moreover, Plaintiffs have provided ample evidence in support of the audit. As a general matter, the Court may look to detailed affidavits and documentary evidence on the issue of damages. See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (discussing court's reliance on such evidence). Here, in addition to the Reinhardt Affidavit, Plaintiffs also submit the Affidavit of Primo Martin, a senior field auditor for Berdon. (Martin Aff. ¶ 1.) Martin attests that "[t]he employees listed in the Audit Report were all members of the Local 138 Union, and were consistently listed in Modern Concrete's payroll records under payroll departments covering its operating engineer employees." (Martin Aff. ¶ 3.) As the Martin Affidavit makes clear, Berdon conducted its audit and determined the amount of unpaid fringe benefit contributions based upon the records Defendants provided. For 2005, Modern Concrete provided only year-end payroll statements, and Berdon

included the hours of only those employees who were members of Local 138 operating engineers. (Martin Aff. ¶ 6.) The Paychex and ADP payroll records for 2006 and 2007 reflected that most of the Contested Employees were listed under the department "Operator" or with a similar designation and had Local 138 Union dues and deductions taken from their pay. (Martin Aff. ¶¶ 4-5.) Berdon also excluded hours that were not covered, such as the time period during which McLoughlin was listed under the department for laborers. (Martin Aff. ¶ 7.) Moreover, the records reflect income tax withholdings for New York State only, not Connecticut. (Martin Aff. ¶ 10.)

Thus, Defendants' single, conclusory affidavit, without any support, is belied by the limited documentation that Defendants did provide and is insufficient[2]. See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. Cent. Enters., Inc., No. 11-CV-0973, 2012 WL 4891564, at *3 (E.D.N.Y. Oct. 15, 2012) (general assertions that audit was inaccurate are insufficient to

---

[2] Furthermore, both Individual Defendants asserted a Fifth Amendment privilege, and, to the extent that Rotondo may be basing his affirmations on documentary evidence, it is unclear whether the documents for which he asserts a privilege underlie his Affidavit. See Bourgal v. Robco Contracting Enters., Ltd., 182 F.3d 898, at *1 (2d Cir. 1999) ("The district court was well within its discretion in precluding Defendants from submitting the affidavits, given the fact that Defendants had invoked the Fifth Amendment and/or spousal immunity with regard to virtually every question ever asked of them in deposition.").

overcome motion for summary judgment); <u>Duffy v. Beaver Site,</u> <u>Inc.</u>, No. 07-CV-0753, 2011 WL 43258, at *4 (E.D.N.Y. Jan. 6, 2011) ("Other than Defendant's conclusory, unsubstantiated assertion in the Joint Pre-Trial Order concerning non-union work, Defendant has not disputed the accuracy of the 2006 Audit results."); <u>Trs. of Local 807 Labor-Mgmt. Health & Pension Funds</u> <u>v. River Trucking & Rigging, Inc.</u>, No. 03-CV-3659, 2005 WL 2290579, at *6 (E.D.N.Y. Sept. 20, 2005) ("[E]mployee affidavits [which contradicted payroll records used for audit] are insufficient to defeat plaintiffs' motion for summary judgment because, standing alone, they simply do not raise a genuine issue of material fact."). Accordingly, the Court finds that Plaintiffs have adequately established their entitlement to unpaid fringe benefit contributions in the amount of $378,937.80.

## III. <u>Damages</u>

Finally, Plaintiffs also seek an award of interest and liquidated damages on the unpaid contributions as well as attorneys' fees and costs. Defendants' only opposition is that the audit deficiencies preclude entry of judgment.

ERISA Section 512 provides in relevant part:

> In any action under this subchapter by a
> fiduciary for or on behalf of a plan to
> enforce section 1145 of this title in which
> a judgment in favor of the plan is awarded,
> the court shall award the plan --

16

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of --
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)(A)-(E). Thus, as the Court has found in Plaintiffs' favor in their action to enforce ERISA Section 515, they are entitled to damages.

The Court will first address interest and liquidated damages before turning to attorneys' fees and costs.

A. <u>Interest and Liquidated Damages</u>

Plaintiffs seek interest and liquidated damages as of December 31, 2012 in the amount of $373,589.50 with additional per diem interest of $165.90 per day to accrue to the entry of judgment.

The CBA and Trust Agreements of the Local 138 Funds provide for interest at the prime rate plus liquidated damages equal to interest or twenty percent of the amount due, whichever is greater. (Pls. Br., Docket Entry 35, at 13 (citing Byington Decl. ¶ 25, Ex. 15; Duffy Aff., Docket Entry 21-12, Exs. A-F,

CBA § 2-E; Trust Agreements, Art. IV, § 4.1(i)).) Accordingly,

Plaintiffs calculate interest as follows:

| Time Period | Unpaid Contributions | Interest | Total |
|---|---|---|---|
| 1/1/05-5/31/05 | $23,166.04 | $23,166.04 x 6.0% (prime rate) = $1,389.96 ÷ 365 days = $3.81 per day x 2768 days | $10,546.08 |
| 6/1/05-5/31/06 | $187,014.08 | $187,014.08 x 8.0% (prime rate) = $14,961.13 ÷ 365 days = $40.99 per day x 2403 days | $98,498.97 |
| 6/1/06-5/31/07 | $168,757.68 | $168,757.68 x 8.25% (prime rate) = $13,922.51 ÷ 365 days = $38.15 per day x 2038 days | $77,749.70 |

(Pls. Br. at 13-14 (citing Reinhardt Aff. ¶¶ 4-7 & Ex. A;

Byington Decl. ¶ 24).)

        In addition, for each time period, Plaintiffs came to

a liquidated damages figure equal to the amount of interest.

The Court has reviewed Plaintiffs' calculations on interest and

liquidated damages and finds them to be correct.[3]   As such,

Plaintiffs' motion for interest and liquidated damages in the

amount of $373,589.50 as of December 31, 2012 plus per diem

interest of $165.90 per day to accrue until the entry of

judgment is GRANTED.

_____

[3] Although it does not affect the analysis, the Court notes that
Plaintiffs may have incorrectly added the total amount of unpaid
contributions, interest, and liquidated damages or included a
typographical error in their brief. (See Pls. Br. at 14.)  The
total amount of such figures is $752,527.30, rather than
$752,577.30.

B. Attorneys' Fees and Costs

Plaintiffs also seek a total of $69,113.88 in attorneys' fees, audit expenses, and costs of litigation.

1. Attorneys' Fees

As the Summary Judgment Order held, Plaintiffs are entitled to a mandatory award of attorneys' fees under 29 U.S.C. § 1132(g)(2). (Summary Judgment Order at 19.) In calculating attorneys' fees, the Court begins by determining the lodestar figure, "'the product of a reasonable hourly rate and the reasonable number of hours required by the case,' which the Second Circuit calls the 'presumptively reasonable fee.'" Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)); accord Finkel v. Universal Sec. Sys., Inc., No. 10-CV-4520, 2011 WL 5402070, at *9 (E.D.N.Y. Sept. 9, 2011), adopted by 2011 WL 5403080 (E.D.N.Y. Nov. 4, 2011); Masino v. Columbus Const. Corp., No. 08-CV-1592, 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009).

In determining the reasonable hourly rate, the Court must look to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)) (internal

quotation marks omitted). The relevant "community" for the purposes of this analysis is "the district in which the court sits." <u>Polk v. N.Y. State Dep't of Corr. Servs.</u>, 722 F.2d 23, 25 (2d Cir. 1983).

Here, as Plaintiffs' contemporaneous time records reflect, partner John H. Byington, III, Esq. charged $235.00 per hour, associate Paula Clarity, Esq. charged $175.00 per hour, and paralegal Dina Dix charged $100.00 per hour (with the exception of the relevant period prior to April 2009, when her rate was $75.00 per hour). (Byington Decl. ¶ 29 & Exs. 16-18.) Mr. Byington is a partner with Archer, Byington, Glennon & Levine, LLP with approximately twenty-four years of experience in labor and employee benefits law litigation. (Byington Decl. ¶ 32.) Ms. Clarity is an associate who graduated from St. John's University School of Law in 2007 and has been practicing labor and employment since. (Byington Decl. ¶ 32.) Finally, Ms. Dix has been a legal assistant for over twenty years and completed paralegal certification over four years ago. (Byington Decl. ¶ 32.)

Given the levels of experience of each of the aforementioned individuals, the Court finds that the requested rates are within the range that Courts in this Circuit have found reasonable in similar cases. <u>See</u> <u>LaBarbera v. Ovan Const., Inc.</u>, No. 06-CV-2867, 2011 WL 5822629, at *5 (E.D.N.Y.

Sept. 20, 2011), adopted by 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011) (finding rates of $390 per hour for work by a partner and $280 per hour for work performed by an associate to be reasonable in an ERISA action involving lengthy litigation and summary judgment); Finkel, 2011 WL 5402070, at *9 (granting partner fees at $275 and $250 per hour, but reducing paralegal fees to $80 per hour in ERISA action); Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008) (rates of $225 per hour for partners, $200 per hour for associates, and $75 per hour for paralegals was reasonable).

Thus, having determined that Plaintiffs' rates are reasonable, the Court next turns to the number of hours. Plaintiffs seek attorneys' fees for 261.05 hours. This case has involved over four years of litigation, including Plaintiffs' successful motions for summary judgment and contempt against Defendants. Such lengthy litigation, in conjunction with the Court's review of the contemporaneous time records, convinces the Court that the number of hours for which Plaintiffs seek compensation is also reasonable. See LaBarbera, 2011 WL 5822629, at *5 (awarding attorneys' fees for nearly 200 hours where case involved discovery, a summary judgment motion, and an inquest on damages).

Accordingly, Plaintiffs' motion for attorneys' fees in the amount of $51,202.25 is GRANTED.

## 2. Audit Expenses and Costs

Finally, Plaintiffs also seek to recover costs of $3,316.63 (Byington Decl. ¶ 28), and auditing fees of $14,595.00 (Reinhardt Aff. ¶ 8 & Ex. B.). Plaintiffs' costs include expenses such as the filing fee, research, mailing, and service. Again, the Court finds that Plaintiffs are entitled to such costs. Finkel, 2011 WL 5402070, at *10 (awarding costs for filing fee, research, postage, and other such expenses); Duffy, 2011 WL 2341178, at *3 (same). Furthermore, ERISA Section 502 provides that the Court may award "such other legal and equitable relief as [it] deems appropriate," 29 U.S.C. § 1132(g)(2), which courts have considered to include audit fees, see Ferrara v. Metro D Excavation & Found., Inc., No. 10-CV-4215, 2011 WL 3610896, at *8 (E.D.N.Y. July 7, 2011), adopted by 2011 WL 3625448 (E.D.N.Y. Aug. 16, 2011); Duffy, 2011 WL 2341178, at *3. Accordingly, Plaintiffs' motion for costs and audit fees is GRANTED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for entry of judgment is GRANTED.

The Clerk of the Court is directed to enter judgment as follows: (1) for the 2008 Judgment, $78,286.27 plus post-judgment interest of $2.87 per day from January 1, 2013 until entry of judgment; (2) $500 per day in contempt fines commencing

on December 21, 2011 through April 1, 2012; (3) $378,937.80 in unpaid fringe benefit contributions; (4) interest and liquidated damages of $373,589.50 plus $165.90 per day from January 1, 2013 until entry of judgment; and (5) attorneys' fees, costs, and audit fees in the amount of $69,113.88.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      July __12__, 2013
            Central Islip, NY